**7IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEON J. HOWARD,**<br>**Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-4839** |
| **WELLPATH, LLC, *et al.*,**<br>**Defendants.** | : | |

**MEMORANDUM**

**SCHMEHL, J. -** */s/ JLS* **SEPTEMBER 17, 2026**

Plaintiff Leon J. Howard filed this *pro se* civil rights action against Defendants Wellpath, LLC ("Wellpath"), SCI Phoenix Wellpath Medical Director Dr. Anthony Letizio, and SCI Phoenix Chief Healthcare Administrator Britney Huner. The individual defendants are sued in their respective individual and official capacities. Howard alleges, *inter alia*, that Defendants violated his Eighth Amendment rights because they deliberately denied him medical treatment related to seeing a specialist for an intestinal disease. All Defendants have filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 21, 27.) Wellpath also filed a Motion to Dismiss based on bankruptcy proceedings (the "Bankruptcy Motion").[1] (ECF No. 16.) Howard filed a response in opposition to Defendants' Motions with the exception of the claims against Wellpath. (ECF No. 41.) For the following reasons, Huner's Motion to Dismiss (ECF No. 27) will be granted and the Bankruptcy Motion will be denied as moot. (ECF No. 16.)

---

[1] Wellpath filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, after which this Court entered an Order staying this case on December 19, 2024. (ECF No. 7.) Following the confirmation of Wellpath's plan of reorganization on May 1, 2025, the Court lifted the stay on May 21, 2025. (ECF No. 8.) Wellpath subsequently filed the Bankruptcy Motion based on the argument that its discharge in the Bankruptcy Court requires this Court to dismiss Howard's claim against it. (ECF No. 16.)

The Motion to Dismiss filed by Wellpath and Dr. Letizio (ECF No. 21) will be granted in part and denied in part.

## I. FACTUAL ALLEGATIONS[2] AND PROCEDURAL HISTORY

Howard, an inmate at SCI Phoenix (Compl. ¶ 3), alleges he "suffers from a yet to be diagnosed intestinal disease that has caused his health to slowly deteriorate," resulting in chronic severe and debilitating symptoms, including fatigue, pain, muscle and joint aches, weakness, bowel movement complications, tongue infections, and significant weight loss (*id.* ¶ 5).[3] As background, he claims the disease caused him to suffer two severe heart attacks in February 2021. (*Id.*) A family member contacted the Central Office for the Department of Corrections ("DOC") in August 2023[4] concerning Howard's medical condition and Defendant Dr. Letizio's refusal to send him to be seen by an off-site gastroenterologist for a follow up examination. (*Id.* ¶ 6.) The family member spoke to Health Service Specialist Shannon Quigley, who conducted "an investigation into [Howard's] medical records and history and determined that he needed to have a follow-up with a gastroenterologist." (*Id.*) A physician's assistant subsequently spoke with Howard about his symptoms and "informed him that [the] Central Office had notified the medical department and/or Dr. Letizio with instruction to schedule him for an off-site follow-up with a gastroenterologist." (*Id.* ¶ 7.)

---

[2] The factual allegations set forth in this Memorandum are derived from Howard's Complaint ("Compl.") (ECF No. 2), and the Court adopts the sequential pagination assigned by the CM/ECF docketing system.

[3] For clarification based on duplicative paragraph numbers in the initial pages of the Complaint, these allegations begin on page 3.

[4] It appears based on the chronological events as described that the contact with the Central Office was in 2023, not August 2024 as stated, and this was a typographical error.

On November 29, 2023, Howard was taken to an appointment with Dr. Steven R. Stanek, a gastroenterologist at Einstein Gastroenterology. (*Id*. ¶ 8.) Dr. Stanek allegedly stated, after reviewing Howard's symptoms and medical history, that he may have an undiagnosed intestinal disease that had been overlooked and "would have to be diagnosed and/or treated by a disease specialist." (*Id*.) Dr. Stanek ordered Howard to be seen by Dr. Delgado Daza Alejandro, a "good" disease specialist, at the Einstein Infectious Disease Center. (*Id*.) Howard alleges Dr. Letizio subsequently "denied the gastroenterologist's orders." (*Id*. ¶ 9.) Howard wrote Quigley a letter on December 6, 2024, informing her that Dr. Letizio denied Dr. Stanek's orders for him "to be examined by the disease specialist whom he recommended for him." (*Id*. ¶ 10.) He received a response to his letter on April 11, 2024, from Erica Benning, the Director of the Bureau of Health Care Services. (*Id.* ¶ 11). Benning's response instructed him to file an inmate request to staff or a grievance with his concerns, and "that he should direct any further health` care concerns" to Defendant Huner. (*Id*. ¶ 12.) Benning stated that she was forwarding his initial letter and her response to Huner "for her to review and resolve Dr. Letizio's denial." (*Id*.) Howard claims Huner still has not contacted him about "the rectifying of Letizio's denial (or to acknowledge that she received [his] letter to [the] Central Office and Ms. Benning's response to it) and/or to respond to [his] requests to staff concerning the denial." (*Id.* ¶ 13.)

Howard alleges that by preventing him from being examined by a disease specialist, Defendants exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[5] (*Id*. at ¶¶ 16-27.) Howard also alleges a state law negligence claim against

[5] Howard also cites to deliberate indifference in violation of the Fourteenth Amendment (Compl. ¶ 1), but as a convicted prisoner, the Eighth Amendment governs his claims. *See, e.g., Kingsley v. Hendrickson*, 576 U.S. 389, 400-01 (2015); *Jacobs v. Cumberland County,* 8 F.4th 187, 193-94 (3d Cir. 2021) (Excessive force claims brought by convicted prisoners are analyzed under the Eighth Amendment's Cruel and Unusual Punishment Clause, while claims brought by

Defendant Wellpath based on the theory of *respondent superior*. (Id. ¶¶ 28-29.) Howard seeks unspecified injunctive relief[6] and compensatory and punitive damages. (*Id*. ¶¶ 30-33.)

In their respective Motions, Defendants argue, *inter alia*, that the claims against them are barred by issue preclusion in light of a prior case Howard filed in federal court, *Howard v. Wellpath*, No. 22-3241 (E.D. Pa.), and, in the alternative, should be dismissed because Howard failed to allege facts to state a plausible Eighth Amendment claim based on deliberate indifference to a serious medical need against Huner and Dr. Letizio. (*See generally* ECF Nos. 21, 27.) Huner asserts the official capacity claims against her are barred by the Eleventh Amendment. (ECF No. 27 at 7-8.) Wellpath argues the claims against it should be dismissed because it cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability, and Howard failed to allege a relevant policy or custom that caused the constitutional violations he alleges. (ECF No. 21 at 10-13, 17-19.) Wellpath also argues the professional negligence claims under state law should be dismissed because Howard failed to file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.[7]

---

pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause). The standard for claims related to a prisoner's medical needs is essentially the same under either the Eighth Amendment or Fourteenth Amendment for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)).

[6] Howard seeks unspecific injunctive relief, which is likely a request to order Dr. Letizio to schedule his appointment with the disease specialist to resolve his underlying claims. In his opposition brief, Howard clarifies that after filing his complaint, Dr. Letizio is no longer employed with SCI Phoenix. (ECF No. 41 at 7.) He also states he received treatment, both a CAT scan and MRI, for his intestinal pain that revealed he had two large lumps on his colon. (*Id*.) Because Howard is no longer under the care of Dr. Letizio and it appears Howard has received the additional treatment requested for his intestinal pain, this prospective relief is no longer available, and this request will be denied as moot.

[7] In light of recent United States Supreme Court precedent, the motion will be denied to the extent he seeks dismissal on this basis. *See Berk v. Choy*, 607 U.S. 187, 189 (2026) (holding

(*Id*. at 19-20.) Howard responds in opposition that his claims are not precluded because the allegations in his Complaint are new claims pertaining to the denial of his ability to see an infectious disease specialist and occurred after the claims in his prior federal case against Defendants. (ECF No. 41 at 2-4.) He also argues he has alleged sufficient facts against Defendants for plausible Eighth Amendment and negligence claims (*id*. at 4, 8) but concedes the claims against Wellpath should be dismissed.[8] (*Id.* at 1 ("Claims against the Defendants should not be dismissed or result in any of the Defendants being dismissed from the comp[laint] (*with the exception of Wellpath*)." (emphasis added.)))

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter,

---

state law requiring submission of an affidavit from a medical professional attesting to the suit's merit has no application in federal court); *see also Talley v. Pillai*, 116 F.4th 200, 207 n.7 (3d Cir. 2024) ("A Pennsylvania malpractice claim is not 'based' on a COM.").

[8] Howard also provides an updated timeline of his events since filing his Complaint. (ECF No. 41 at 5-7.) Although allegations filed outside the Complaint cannot be considered for the underlying plausibility of the claims, this information is included for background purposes only. Howard informs the Court that after experiencing severe bleeding, he received a blood test on September 6, 2024, which revealed his hemoglobin count had dropped. (*Id*. at 5.) Based on these results, Howard again requested to be seen by disease specialist Dr. Alejandro, which Dr. Letizio denied. (*Id*.) Howard filed a grievance on September 20, 2024, based on this denial. (*Id*.) Dr. Letizio followed up with Howard about his grievance and explained the Central Office contacted him about Howard's current treatment. (*Id.* at 5-6.) After discussions with Howard about the treatment he has received, Dr. Letizio subsequently ordered a CAT scan for him and also told him that the disease specialist appointment would be approved. (*Id*. at 6.) Howard received the CAT scan on June 20, 2025, but did not receive an appointment with the disease specialist. (*Id*. at 7.) The CAT scan revealed two large lumps on his colon. (*Id*.) Based on these results, the new medical director ordered him to have an MRI since Dr. Letizio was no longer employed at SCI Phoenix. (*Id*.) Howard received an MRI, colonoscopy, and evaluation by a gastroenterologist on February 2, 2026. (*Id*.)

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, the Court must accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).

Dismissal of a complaint based on an affirmative defense, such as *res judicata*, is only appropriate at the pleading stage when the "defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). "[W]hile a court may entertain a motion to dismiss on [affirmative defenses], it may not allocate . . . [burdens] . . . in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014). Rather, the burden of pleading and proving an affirmative defense is borne by the defendant. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997).

## III. DISCUSSION

Howard asserts violations of his constitutional rights, as well as violations of state law. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A. Preclusion

Defendants assert that Howard is precluded from rearguing the issue of whether he received adequate care for his intestinal issues because the Court already dismissed a prior case regarding that care. *See Howard v. Wellpath*, No. 22-3241, 2023 WL2226797, at *1 (E.D. Pa. Feb. 24, 2023). Howard responds in opposition arguing claim preclusion does not prevent him from moving forward with these claims. In an abundance of caution, the Court will address both issue preclusion and claim preclusion.

Federal courts look to state law in determining whether to apply collateral estoppel,

also referred to as issue preclusion. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). Collateral estoppel bars the re-litigation of a previously litigated issue. *See Vignola v. Vignola*, 39 A.3d 390, 393 (Pa. Super. Ct, 2012). Collateral estoppel "is a broader concept than *res judicata* and operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being relitigated in a subsequent suit." *Id.* (citation omitted.) Under Pennsylvania law, the following conditions must be met in order to invoke issue preclusion: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action; and (5) whether the determination in the prior proceeding was essential to the judgment. *Id.*

Turning to claim preclusion, also called *res judicata*, which "protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("Rather than resting

on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims." (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984))). Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *In re Healthcare Real Est. Partners, LLC*, 941 F. 3d 64, 72 (3d Cir. 2019) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

In the prior action, the Court dismissed Howard's deliberate indifference claims against Wellpath, Dr. Letizio, Huner, and another medical provider, Dr. Bora, for failure to state a claim. *See Howard*, 2023 WL2226797, at *1. Howard's allegations in that case, relevant to Defendants here, were largely based on Dr. Letizio's failure to follow up with a gastroenterologist at Temple University, who diagnosed Howard with a small intestinal infection and prescribed antibiotics in 2022. *Id*. at *2. Howard claimed the antibiotics made his infection and symptoms worse, and after several sick calls and a grievance filed about his issues, Dr. Letizio told him in April 2022 that they would contact the gastroenterologist about his pain. *Id*. However, Dr. Letizio never followed up with Howard about whether he reached out, or received a response from the gastroenterologist, and, thus, failed to treat him. *Id*. He also claimed he dealt with this intestinal pain for thirteen years and the medical staff at SCI Phoenix are familiar with his symptoms dating back to treatment received since 2010. *Id*. at *2-3. The Complaint in this case does not reallege any factual allegations occurring in 2022, or any that are based on his appointment with the Temple University gastroenterologist, and/or Dr. Letizio's subsequent failure to treat him after he received antibiotics. Importantly, it was not determined that Howard did not actually have an intestinal disorder as Defendants insinuate. Rather, the Court just concluded that the

Defendants were not deliberately indifferent to his needs relating to the care received *at that time*. This is distinguishable from the case cited by Defendants, *Kokinda v. Pa. Dept. of Corrections*, 803 Fed.Appx. 574, 577 (3d Cir. 2020), which precluded Kokinda from bringing a new deliberate indifference case related to not receiving a certain diet when a prior case concluded that such diet was not medically necessary for his serious medical needs.

In contrast, this action is premised on Dr. Letizio's denial for Howard to see a disease specialist after Dr. Stanek, a gastroenterologist at Einstein Gastroenterology, recommended him to do so in November 2023. (Compl. ¶¶ 8, 9.) Although the same parties are sued here, with the exception of Dr. Bora, and the issues relate to Howard's complaints about his intestinal pain, this cause of action is based on events related to a denial to see disease specialist nearly two years after he saw the Temple University gastroenterologist. Furthermore, the fact that Howard saw Dr. Stanek, who recommended he see an infectious disease specialist based on his complications, demonstrates that the circumstances related to his medical needs for his intestinal pain have changed since 2022. Thus, the issues raised here cannot be determined from the face of the Complaint as "identical" or based on the same cause of action regarding his treatment challenged in the 2022 case. Accordingly, preclusion is inapplicable and Defendants' motions will be denied as to this ground.

### B. Official Capacity Claims

#### 1. Defendant Huner

Huner moves to dismiss Howard's claims for damages against her in her official capacity as barred by the Eleventh Amendment. (ECF No. 27 at 7-9.) She also argues that the official capacity claims for damages are barred because state employees in their official capacities are

not "persons" subject to liability under § 1983. (*Id.* at 9.) Howard does not respond to this argument in his opposition brief.

Official capacity claims are indistinguishable from claims against the governmental entity that employs Huner, which is the Commonwealth here. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs*., 436 U.S. 658, 690, n. 55 (1978))). Thus, § 1983 claims against Huner in her official capacity are really claims against the Commonwealth, which is shielded from such claims by Eleventh Amendment immunity and, in any event, is not considered a "person" subject to liability under § 1983. *See Downey v. Pa. Dep't. of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *see also Lavia v. Pa. Dep't of Corr*., 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). Accordingly, the Court will grant Huner's motion to dismiss Howard's official capacity claims against her.

**2. Defendant Dr. Letizio**

The "official capacity" claims against Dr. Letizio, a Wellpath employee, are also not cognizable because Wellpath is a private entity. *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit" (citation omitted.)) Even if official capacity suits against individuals who work for private companies

were cognizable, the suit would, in effect, be one against the company for whom that individual works, which is Wellpath here. *See Graham,* 473 U.S. at 105. Since Howard concedes the claims against Wellpath should be dismissed (*see* ECF No. 41 at 1), the official capacity claims against Dr. Letizio are duplicative of those claims and are also dismissed. *Accord Burk v. West*, No. 21-4968, 2021 WL 5758945, at *2 (E.D. Pa. Nov. 24, 2021).

**C. Failure to State an Eighth Amendment Claim**

Defendants Huner and Dr. Letizio next argue that Howard has failed to state a plausible Eighth Amendment claim against them. To state a constitutional claim under the Eighth Amendment based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Township*,

946 F.2d 1017, 1023 (3d Cir. 1991). This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *see also Durmer v. O' Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Inadequate care may nevertheless give rise to a deliberate indifference claim when the Defendants "act with the requisite state of mind when providing that inadequate care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).

**1. Defendant Huner**

Huner argues that the Complaint fails to allege she had any personal involvement in his medical treatment and Howard premises his claims against her based on her supervisory position at SCI Phoenix. (*See* ECF No. 27 at 9-12.) She further argues Howard has failed to state a claim that she was deliberately indifferent to his serious medical needs. (*Id*. at 12-14.) Howard's response does not refute Huner's arguments or offer any additional clarification as to Huner and her involvement relevant to his claims, referring to "Defendants" collectively, such as the "Defendants denied a gastroenterologist orders for [him] to be examined by a disease specialist" and Defendants have "yet to diagnose the source of what [is] causing" his gastrointestinal issues." (ECF No. 41 at 4.) He points to Dr. Letizio and his actions throughout his opposition but does not make any argument in response to Huner's motion, or even state her name once throughout his response.

To state a § 1983 claim, as noted, Howard must allege how each defendant was personally involved in the events and occurrences giving rise to the claims brought against that

defendant. *See Rode*, 845 F.2d at 1207; s*ee also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, 845 F.3d at 1207). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citation omitted). Furthermore, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). A plaintiff cannot predicate liability for a § 1983 claim on a *respondeat superior* basis. *Chavarriaga*, 806 F.3d at 227 (citing *Rode*, 845 F.2d at 1207). Instead, in § 1983 actions, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).

First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). The second way a supervisor may be personally liable for unconstitutional acts taken by subordinates is if "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Howard's Complaint alleges that in response to his letter sent to the DOC Central Office complaining about Dr. Letizio denying him to see a disease specialist, Benning responded that she was forwarding his initial letter and her response to Huner "for her to review and resolve Dr. Letizio's denial." (Compl. ¶ 12.) Howard claims Huner has not contacted him about "the rectifying of Letizio's denial (or to acknowledge that she received [his] letter to [the] Central Office and Ms. Benning's response to it) and/or to respond to [his] requests to staff concerning the denial." (*Id.* ¶ 13.) He also asserts that as the Chief Health Care Administrator, she oversees "the medical staff, personnel and handling problems inmates have with the medical department and/or staff in general." (*Id*. at 2, ¶ 7.) As an initial matter, it is not clear if Huner received the letter from Benning or even knew about Dr. Letizio's denial for him to see the disease specialist. His own allegations aver that Huner did not acknowledge receiving this letter and he relied on Benning, a third party, to notify her about his issues. He does not allege that he made any additional efforts during the relevant period of time to contact Huner or describe any other specific involvement she may have had in providing his care. As pled, this does not sufficiently allege Huner was personally involved in, or even knew, about Dr. Letizio's appointment denial. He also appears to attempt to impose liability upon Huner based on general allegations that she is

in charge of health care operations at SCI Phoenix, which he cannot do. *See Saisi*, 822 F. App'x at 48. Because he has presented insufficient allegations regarding her involvement in his medical treatment, it follows that he has not pled a plausible supervisory liability claim. *See, e.g., Iqbal*, 556 U.S. at 678; see also *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). Absent allegations supporting an inference that Huner was aware of Howard's issues pertaining to seeing a specialist or that she played a role in denying that care, Howard also cannot allege that she was deliberately indifferent.[9] Thus, the deliberate indifference claim against Huner is not plausible and her motion to dismiss this claim will be granted.[10]

---

[9] The Court notes even had Howard alleged that Huner received the letter from Benning and knew about Dr. Letizio's denial, she still could not be held liable for deliberate indifference as non-medical provider. Claims based on inadequate medical care against a non-medical provider, like Huner, fail because Howard alleges that he is under the care of medical staff at SCI Phoenix. Courts have held that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill,* 372 F.3d at 236 ("Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor."); *see also, e.g., Stewart v. Pa. Dep't of Corr.*, 677 F. App'x 816, 819 (3d Cir. 2017) (*per curiam*) (affirming dismissal of claims where plaintiff "claimed that these Defendants, supervisory officials who do not participate in individual medical care decisions, simply failed to intervene in his medical care" because "[s]uch a claim is not viable under the Eighth Amendment"); *Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

[10] Huner also argues in support of dismissal for a negligence claim, but Howard only alleges the negligence claim against Wellpath. (Compl. at 7.) In any event, a state law negligence claim against her would be barred by sovereign immunity for the reasons stated in her motion, and a professional negligence claim would also fail because she is not licensed medical provider. *See* Pa. R. Civ. P. 1042.3(a) ("In any action based upon an allegation that *a licensed professional* deviated from an acceptable professional standard…") (emphasis added); *see also, see also, e.g., Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (*per curiam*) ("State sovereign immunity bars these suits against the Commonwealth and its employees acting within the scope of their duties, as the PSP employees were, and the limited

**2. Defendant Dr. Letizio**

As explained, Howard alleges on November 29, 2023, he was taken to an appointment with Dr. Stanek, a gastroenterologist, at Einstein Gastroenterology. (Compl. ¶ 8.) After reviewing his symptoms and medical history, Dr. Stanek told him that he may have an undiagnosed intestinal disease that has been overlooked and "would have to be diagnosed and/or treated by a disease specialist." (*Id.*) Dr. Stanek ordered Howard to be seen by Dr. Alejandro, a disease specialist at the Einstein Infection Disease Center. (*Id.*) Howard alleges Dr. Letizio subsequently "denied the gastroenterologist's orders." (*Id.* ¶ 9.) These allegations indicate that Dr. Letizio was aware of Howard's need for further treatment, which was to see a disease specialist due to a serious medical need, and he denied Howard such treatment. Although it is unclear why Dr. Letizio denied Dr. Stanek's order for Howard to see a disease specialist, the deliberate indifference claim based on the allegations as pled may proceed past this stage of the proceedings because they support an inference that Dr. Letizio denied medically indicated care for Howard. While a doctor's exercise of medical judgment in providing care precludes a finding of deliberate indifference, these allegations, read in the light most favorable to Howard suggest that Dr. Letizio was not exercising medical judgment when he denied Howard from seeing a disease specialist after Dr. Stanek, a gastroenterologist, opined he needed such care after

---

negligence exceptions to sovereign immunity do not apply as Poteat alleged only intentional torts."); *Kidd v. Pennsylvania*, 37 F. App'x 588, 592 n.3 (3d Cir. 2002) (summarily dismissing an intentional infliction of emotional distress claim because "[t]he Commonwealth, it[s] subdivisions, and its employees acting within the scope of employment enjoy Eleventh Amendment immunity in federal court. The Pennsylvania legislature has not chosen to waive this immunity for intentional torts." (citation omitted)); *Rightmyer v. Philly Pregnancy Ctr., P.C.,* No. 23-1925, 2024 WL 896571, at *3 (E.D. Pa. Mar. 1, 2024) ("As a licensed registered nurse and not a licensed physician, Ms. Swann does not meet the substantive requirements of § 1303.512 and, thus, her [Certificate of Merit] does not meet the requirements of Pennsylvania Rule 1042.3.").

examining Howard.[11] *See Merritt v. Fogel*, 349 F. App'x 742, 746 (3d Cir. 2009) (*per curiam*) (vacating dismissal of complaint despite the Magistrate Judge's observation that "defendants have repeatedly monitored and tested [plaintiff] and have determined that he does not qualify for HCV treatment" when other allegations reflected defendants falsely represented that plaintiff was never within the protocol for treatment despite prior recommendation from specialists and made comments arguably suggestive of deliberate indifference); *see also Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (explaining that, while courts will "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment[,] which remains a question of sound professional judgment[, i]mplicit in this deference to prison medical authorities is the assumption that such an informed judgment has, in fact, been made" (citation modified)). In sum, Dr. Letizio has not met his burden for obtaining dismissal on the merits, and the deliberate indifference claim against him is sufficient to proceed to discovery.

## IV. CONCLUSION

For the foregoing reasons, Huner's Motion to Dismiss will be granted and the claims against her will be dismissed with prejudice. The Motion to Dismiss filed by Wellpath and Dr. Letizio will be granted in part and denied in part. The Motion will be granted as to the claims against Wellpath and denied as to the Eighth Amendment medical indifference claim against Dr. Letizio. Huner and Wellpath will be terminated as a defendant in this case. All official capacity claims and Fourteenth Amendment claims will also be dismissed. The Court will direct Dr.

[11] It is also worth noting that considering the long-standing history and knowledge of Howard's condition based on seeing medical staff for this condition over the years, Dr. Letizio was well aware of Howard's complications related to the underlying medical issues.

Letizio to file a responsive pleading as to remaining claim, which is the Eighth Amendment medical indifference claim against him.

An appropriate Order follows.